## Rife *versus* The Lebanon Mutual Insurance Co.

Where, by the terms of a fire insurance policy, it became the duty of the insured to give notice to the insurance company of any change ·in the insured or neighboring premises, or in the use or occupation of the same, whereby the risk was increased so as to increase the rate of insurance, the insurer was bound only to give notice to the company of any change of which he had knowledge, and by which he knew the rate of insurance would be increased. In an action on said policy, it was therefore held to be error, to submit to the jury to find as questions of fact, whether the rate or hazard was increased by a lateral railroad constructed on the premises, and if so whether it was increased so as to increase the rate of insurance.

June 3d, 1886.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Dauphin county:* Of May Term 1886.

Covenant by Jacob Rife against The Lebanon Mutual Insurance Company of Jonestown, Pa., upon a policy of fire insurance dated April 3d, 1871, for twenty-four hundred dollars, upon his dwelling house $1,000, upon his barn $1,000, and upon his corn house $400. Pleas. Covenants performed *absque hoc* with leave, etc.

The policy was in the perpetual class, mutual department, and was in force on March 12th, 1883, on which date the barn and corn house were totally destroyed by fire. Due notice of the fire was given the defendant, and proofs of loss were made · as required by the policy. Section 9 of the policy providing against increase of risk without notice to the company fully appear in the opinion of the Supreme Court. No change in the buildings or in their use and occupation ·was made, but there was a change made in the premises about ten years after the·, date of the policy. This change consisted in a lateral railroad being constructed over it upon which a locomotive engine was used to draw cars from the furnace situate on the adjoining premises to the Pennsylvania railroad. Notice of the making of the railroad was not given to the defendant.

On the trial the plaintiff offered to prove that the defendant had, after the making of another lateral railroad, to be used in the same way as this one, running in close proximity to certain property insured by said company, with full knowledge of the existence of such railroad, renewed the policy or policies at the same or a less rate of insurance than had been charged before said railroad was made, for the purpose of showing from the acts of the company, that it was not considered that the risk was thereby increased. This offer the court refused and excluded the evidence. (First assignment of error.)

The court charged the jury, *inter alia*, as follows:

It was also said that Mr. Rife should have knowledge of the increased risk. Now this is not the law under this contract, whatever it may be under contracts which distinctly provide that he shall have knowledge of the increased risk,— whoever it may concern under such contracts that is not the case under this contract. (Second assignment of error.). . . . So if you find that the natural and probable consequences were that the danger of loss by fire was increased, he must be taken to have known its natural and probable consequences. (Third assignment of error.)

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

If the jury believe there was an increase of risk in making the railroad, the law presumed that the plaintiff had knowledge that the rate of insurance was also thereby increased. (Fourth assignment of error.)

Verdict for the defendant and judgment thereon, whereupon the plaintiff took this writ and filed the above assignments of error.

*H. M. Graydon* and *B. F. Etter*, for plaintiff in error.—The question for the jury was not whether the risk was increased so as to change the rate of insurance in the opinion of the jury, but did the plaintiff know that the rate of insurance was increased by the change. This case is decided by Lebanon Mutual Insurance Co. *v.* Losch, 42 Leg. Int., 416.

*Mumma & Shoop*, for defendant in error.

Mr. Justice CLARK delivered the opinion of the court, October, 4th, 1886.

This action of covenant is upon a perpetual policy of fire insurance, issued by the defendant, 3d April, 1871, to the plaintiff, in the sum of $2,400 : $1,000 thereof, upon his dwelling house, $1,000 upon the barn, and $400 on the corn house. The barn and the corn house were totally destroyed by fire, 12th, March, 1883. The premiums and assessments had all been

promptly paid, and due notice and proofs of loss were given as required by the policy.

Among the printed conditions of the insurance set forth in the policy, was the following:—

9. "If, during the insurance, any alterations be made on the premises, buildings be erected, or change made in the use or occupation of the same or neighboring premises, or otherwise, whereby the risk or hazard is increased, so as to increase the rate of insurance, it shall be the duty of the insured to give notice thereof to the secretary, pay the additional premium and obtain the consent of the company thereto in writing, otherwise the insured shall not be entitled to recover for any loss or damage by fire originating in consequence of such change: provided, that in case of any alteration and consequent increase of risk, the company may, at their option, terminate the insurance, after notice given to the insured, or his representative, of their intention to do so."

In the year 1881, Michael Schall, who was the owner and operator of a furnace property, on the adjoining land, by the order of the Court of Common Pleas of Dauphin County, under Act 5th May, 1832, constructed a lateral railroad to connect his furnace with the Pennsylvania railroad; and locomotive engines and cars were placed thereon and used, in transporting coal, ore, and iron, between the points named, a distance of about five hundred yards. This lateral railroad ran within about twelve feet of the corner of the corn house, and the jury has found that the fire, which originated in the corn house, was caused by sparks from the locomotive engines.

The question in the cause arises upon the proper construction of the ninth condition of the policy, above quoted. The court submitted to the jury the following questions of fact: first, whether by the construction of the lateral road, the rate or hazard was increased; and if so, second, was it increased so as to increase the rate of insurance; and third, did the fire originate from, or in consequence of, the change in the occupancy of the neighboring premises. All of these inquiries were settled in the affirmative, and the verdict under the instructions of the court, was, necessarily, for the defendant.

It must be conceded, we think, that the plaintiff was bound only to give notice to the company of any change, of which he had knowledge, and by which he knew the rate of insurance would be increased. He was certainly not obliged to give notice of a change in the use or occupancy of his own, or the neighboring premises, which in the fair exercise of his own knowledge and judgment, he believed would not increase the hazard or the rate of insurance; this would be absurd. There may be cases, of course, in which the increase of risk is so

palpable and plain, that the knowledge of the insured must necessarily be inferred; this inference may be drawn from evidence, direct or circumstantial, as in other cases.

But the proper question for the consideration of the jurors was, not as the learned judge of the court below seemed to suppose, whether or not, according to their judgment under the evidence, the risk was so increased as to increase the rate, but whether, from all the facts in the case, the plaintiff knew that it was so increased. If he did, he was bound, by the express terms of his contract, to give notice of the fact to the company; if he did not, he was not. The exact question in this case was considered and decided in Lebanon Mut. Ins. Co. *v.* Losch, 42 Leg. Int., 416, where our brother, PAXSON, in his construction of a policy containing the same clause, says: " Had the conditions of insurance required the insured to give notice to the company of any change in the surroundings, it would have been his duty to give notice of the erection of the carriage factory. Such, however, was not the condition. The notice was only required in case the change was such as to increase the risk or hazard, 'so as to increase the rate of insurance.' Under this clause it is manifest that the insured must be shown to have knowledge that the building would not only increase the risk, but that it would also enhance the rate of insurance. The conditions of the policy must be construed most strongly against the company. We are not to assume, when the plaintiff below seeks to recover on his policies for what at least appears to be an honest loss, that he knew the factory building would increase the risk to such an extent as to increase the rate of insurance. There was nothing upon the face of his policy or in the conditions attached, had he read carefully every word of both, which could have given him this information. It was a fact, the solution of which must be found outside this policy. There was not a word of evidence to show that the insured knew that the carriage factory would increase the risk to the extent specified in the policy, nor indeed to any extent."

The judgment is reversed, and a *venire facias de novo* awarded.