# First National Bank of Irwin *v.* Foster, Appellant.

*Guaranty—Judgments—Release of liens—Good faith—Guarantor not discharged.*

1. A creditor in dealing with the security held for the payment of a debt, is required to use ordinary business judgment, and do what a prudent business man would do under the circumstances, and if he acts in good faith and without negligence, he is not responsible for a mere error of judgment on his part.

2. Where the owner of guaranteed judgments has good ground for the belief that bankruptcy proceedings will be instituted by the general creditors of the defendant in the judgment, a corporation in the hands of a receiver, he may, without discharging the guarantor, enter into an agreement in good faith with the general creditors to release the liens of his judgment, so as to avoid the expenses of bankruptcy and enable the property to be sold by the receiver.

3. In such case if a sale by the receiver does not raise a sufficient sum to pay the debts, the guarantor may be held liable on the guaranty to his principal.

Argued September 26, 1927.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 93, March T., 1927, by defendant, from judgment of C. P. Westmoreland Co., May T., 1923, No. 448, on verdict for plaintiff, in case of First National Bank of Irwin v. R. J. Foster.   Affirmed.

Assumpsit on guaranty of promissory notes.   Before DOM, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $7,500.   Defendant appealed.

*Error assigned,* inter alia, was refusal of judgment for defendant n. o. v., quoting record.

*John E. Kunkle,* with him *Christ. C. Walthour* and *J. E. Kunkle, Jr.,* for appellant.—Plaintiff by releasing the liens of the judgments deprived defendant of the right to have all questions affecting the matter passed upon in the regular legal proceedings and in the proper court; plaintiff, therefore, has no right to assume, as it seems to have done in this case, that the Jersey Cereal Food Co. would have been declared a bankrupt by the bankrupt court.   The action of plaintiff was voluntary and any loss that may be sustained is the result of this voluntary act: Holt v. Bodey, 18 Pa. 207; Boschert v. Brown, 72 Pa. 372; Stark v. Fuller, 42 Pa. 320; Beaver Trust Co. v. Morgan, 259 Pa. 567; Com. v. Vanderslice, 8 S. & R. 452.

*George W. Flowers,* with him *R. Kay Portser* and *R. Kirk McConnell,* for appellee.—Where a creditor has the means of satisfaction in his hands and relinquishes or

releases the security, the surety is released only to the extent he is injured thereby: Ramsey v. Bank, 2 P. & W. 203; Everly v. Rice, 20 Pa. 297; Wharton v. Duncan, 83 Pa. 40.

OPINION BY MR. JUSTICE FRAZER, November 28, 1927:

Plaintiff discounted three judgment notes signed by the Jersey Cereal Food Company, each of them containing an endorsement signed by defendant and another to the effect that they did "guarantee payment of the within note." The Jersey Cereal Food Company subsequently became financially involved and on July 14, 1922, plaintiff entered judgment on the three notes. A receiver was appointed for the company July 26th, but within four months from the date of entry of the judgments a number of creditors prepared to file a petition in bankruptcy against the company, to prevent judgment creditors from obtaining priority in the distribution of proceeds derived from sale of real estate. Negotiations were begun for the purpose of avoiding expense and saving as much for creditors as possible and as a result all judgment creditors, whose claims had been entered within four months, agreed to release the liens of their respective judgments in consideration of the agreement of the other creditors to withdraw their proceedings in bankruptcy, thus permitting the property to be sold by the receiver. All judgment creditors existing at that time, including plaintiff, accordingly filed releases, although it appears defendant afterwards entered up three judgments against the company which he did not release. The property was subsequently sold by the receiver; the proceeds resulting from the sale, however, were insufficient to pay the unsecured creditors in full. Plaintiff sued defendant on his guarantee, and the latter set up in defense that the release of the judgment given by plaintiff was prejudicial to him, and, consequently, released him from liability on the notes. Plaintiff contends, however, that the amount secured at the re-

ceiver's sale was greater than would have been secured had the bankruptcy proceeding been carried out, and, consequently defendant was not damaged.   The trial judge instructed the jury that if the security was sufficient to have paid the notes then the act of plaintiff in releasing the judgments would release defendant from liability on his guarantee or entitle him to set-off as damages the amount of injury he actually sustained, but submitted to them the question whether defendant actually suffered injury by the release, with further instructions that if not there were no damages which he was entitled to set-off.   The jury found for plaintiff for the full amount of its claim with interest, and the court subsequently dismissed defendant's motions for a new trial and for judgment n. o. v.   Defendant appealed.

There is no serious dispute as to the legal effect to be given the releases of judgment, assuming for the moment that defendant was injured thereby.   The uniform rule is that where a creditor releases the principal from payment of a debt he thereby releases the surety entirely or if he releases the principal from a part only, the surety is released pro tanto.   Likewise, if the creditor holds collateral security for the debt, the release or surrender of the collateral will operate as a release or discharge of the surety from liability insofar as the security would have produced sufficient funds to pay the debt in whole or in part: Ramsey v. Westmoreland Bank, 2 P. & W. 203, 205; Park Bank v. Kleman, 278 Pa. 165, 169.   Defendant does not question this rule, but claims neither plaintiff nor the jury had the right to decide that the petition in bankruptcy would necessarily have been followed by an adjudication declaring the company bankrupt nor that a lesser amount would have been obtained from a sale of the property in bankruptcy proceedings than could be realized through a sale by the receiver, and that when plaintiff undertook to determine these questions without consulting defend-

ant it assumed the responsibility of any deficiency arising from the subsequent sale of the property.

A creditor, in dealing with the security held for the payment of a debt, is required to use ordinary business judgment and do what a prudent business man would do under the circumstances. And if he acts in good faith and without negligence, he is not responsible for a mere error of judgment on his part. "Having accepted dominion over the thing assigned, whereby the debtor is prevented from protecting his property by such action as may be needed, the creditor should not be supinely negligent concerning the thing which it is his duty to reassign to the debtor when he pays his debt. But those requirements should not be stretched beyond their reason and spirit": City Bank of York v. Rieker, 262 Pa. 28, 31. While an adjudication of bankruptcy does not necessarily follow the presentation of a petition, the fact that a receiver had already been appointed for the debtor company and that numerous judgments entered against it by confession certainly constituted reasonable grounds for believing the company had committed acts of bankruptcy and that an adjudication to that effect would probably follow the presentation of the petition. In that case plaintiff's judgment would lose its lien because entered within four months previous to the filing of the petition. While the question whether a better price for the realty could be obtained by the receiver than would have been procured in bankruptcy proceedings may have presented ample room for a difference of opinion, it is reasonably certain that additional expenses would have resulted, had the bankruptcy proceedings been started, with a necessary reduction in the amount available for payment of creditors. We find no proof of carelessness or negligence on the part of plaintiff; on the contrary the record discloses that it used every effort to locate defendant and notify him of the situation, but without success. In fact, defendant did not appear at the trial. The jury were told that if the

bankruptcy proceeding was inevitable, and that if more money, or at least as much, was obtained for the creditors by the receiver as would have been obtained in bankruptcy proceedings, defendant was not damaged. The trial judge also charged that the burden was on plaintiff to show defendant was not injured by the release of the judgments. These instructions were as favorable as defendant could ask. We find no cause for reversal in any of the assignments of error.

The judgment is affirmed.