785 F.2d 660
 TRANSAMERICA INSURANCE COMPANY, a California corporation,
Plaintiff/Appellant/Cross-Appellee,
v.
CITY OF KENNEWICK, a municipal corporation of the State of
Washington, Defendant/Appellee/Cross-Appellant.
 Nos. 84-4308, 84-4309.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 9, 1986.
Decided Jan. 28, 1986.
Designated for Publication March 27, 1986.
 
 Ladd B. Leavens, Davis, Wright, Todd, Riese & Jones, Seattle, Wash., for plaintiff/appellant/cross-appellee.
 William L. Cameron, Kennewick, Wash., for defendant/appellee/cross-appellant.
 Appeal from the United States District Court for the Eastern District of Washington.
 Before WRIGHT, CANBY and WIGGINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Transamerica Insurance Company ("Transamerica") and the City of Kennewick, Washington ("City") both appeal a $29,649.49 judgment for Transamerica in its suit against the City for monies due under a surety agreement. We affirm.
 
 
 2
 Transamerica brought this diversity action against the City to recoup overpayments the City had made to K & C Diversified Construction, Inc. ("K & C"). K & C and the City had executed a $517,000 contract for construction of a sewer main. Transamerica was the surety, and it satisfactorily completed the construction work pursuant to its surety bond following K & C's default. Because several payments the City made to K & C were premature under a strict reading of the construction contract, Transamerica alleged that its security was impaired. It argued that the payments constituted a "substantial and material alteration" of the agreement, therefore releasing Transamerica pro tanto. Specifically, Transamerica complained about three sums:
 
 
 3
 1) The City's payment of $16,529.61 to K & C for materials on hand but not installed ("Materials Payment").
 
 
 4
 2) The City's payment of $42,135.12 to K & C for installation of pipe that in fact was never installed ("Pipe Payment").
 
 
 5
 3) Transamerica's expenditure of some $47,000 to rework backfilling in an area where pipe had been installed improperly by K & C prior to its default ("Backfill Payment").
 
 
 6
 The City counterclaimed for about $12,500 in alleged overpayments it made to K & C and Transamerica, a claim Transamerica conceded.
 
 
 7
 After a bench trial, the district court, applying the principle of James Black Masonry & Contracting Co. v. National Surety Co., 61 Wash. 471, 112 P. 517 (1911), found Transamerica had been prejudiced by the City's Pipe Payment. The early payment both reduced the security the surety was entitled to and diminished the contractor's incentive to complete the project.
 
 
 8
 At the same time, the court found Transamerica was not prejudiced by the Materials Payment since the payment was made in good faith and the value of materials on hand at default exceeded the overpayment. Finally, the court found for the City on the Backfill Payment. It entered a $29,649.49 judgment for Transamerica.[1] On appeal, only the rulings on the Materials Payment and the Pipe Payment are before us.
 
 I. STANDARD OF REVIEW
 
 9
 Questions of state law are reviewed de novo by this court. Matter of McLinn, 739 F.2d 1395, 1397-98 (9th Cir.1984) (en banc).
 
 II. THE MATERIALS PAYMENT
 
 10
 Transamerica argues forcefully that the rule of James Black Masonry & Contracting Co. v. National Surety Co., 61 Wash. 471, 112 P. 517 (1911), controls both payments in issue. We disagree. In Black Masonry, the Washington Supreme Court released a surety after the obligee altered the underlying construction contract by paying a subcontractor prematurely. The court recognized that improper advance payments could prejudice a surety both by depriving a surety of the security that the obligee agreed to hold for its benefit and by reducing the contractor's incentive to finish the work according to the contract. Id. at 476, 112 P. at 519.
 
 
 11
 We recognize this potential for prejudice from advance payments. The mere fact of a premature payment does not automatically mean a surety has been prejudiced, however. Washington courts have held sureties liable despite unauthorized advance payments where made reasonably and in good faith. See Young Men's Christian Assoc. v. Gibson, 58 Wash. 307, 108 P. 766 (1910); J & J Electric, Inc. v. Gilbert H. Moen Co., 9 Wash.App. 954, 516 P.2d 217 (1973). Even the Black Masonry court noted that a surety is excused only if the unauthorized contract alteration was "substantial, working a pecuniary disadvantage to the surety, or depriving him of some protection or privilege reserved in the bond." Id. 61 Wash. at 475, 112 P. at 518. Given the trend toward more liberal construction of compensated surety agreements since the Black Masonry decision, we feel confident that Washington courts today would, as the district court here did, examine the surety's prejudice in light of all of the circumstances, especially the reasonableness of the obligee's behavior and its good faith.
 
 
 12
 We conclude, therefore, that the district court correctly found for the City on the Materials Payment. True, Transamerica technically was deprived of some $16,000 in "protection" by virtue of the advance payment. The district court found, however, that the City made that Materials Payment in good faith for materials that were in fact on hand at the construction site and paid for by the contractor. While the technical letter of the construction contract may have been violated, we believe the City's behavior was reasonable. By paying only for materials on hand and paid for, the City acted reasonably to compromise a disagreement with K & C while protecting itself and its surety from additional financial exposure. In these circumstances, we find the payment did not prejudice Transamerica.
 
 III. THE PIPE PAYMENT
 
 13
 The City believes the good faith defense of YMCA and J & J Electric also to be applicable to the Pipe Payment. It argues that it made this payment in good faith, strictly according to directions from the City Engineer. We find YMCA distinguishable, however. The owner in YMCA acted reasonably and relied on certifications by a third party. By contrast, the City here relied on certifications negligently made by its own employee. Thus, we find the City is not entitled to a good faith defense.
 
 
 14
 The liberal trend in Washington surety law, illustrated by the decisions in J & J Electric and Inland-Ryerson Constr. Prods. Co. v. Brazier Constr. Co., 7 Wash.App. 558, 500 P.2d 1015 (1972), is clearly subject to a condition: before a surety's obligation will be enforced after an unauthorized alteration of the contract, the obligee must have acted non-negligently.
 
 
 15
 In Inland-Ryerson, the court specifically adopted Restatement of Security Sec. 132 (1941), which reads:
 
 
 16
 Where the creditor has security from the principal and knows of the surety's obligation, the surety's obligation is reduced pro tanto if the creditor
 
 
 17
 (a) surrenders or releases the security, or
 
 
 18
 (b) wilfully or negligently harms it....
 
 
 19
 Id. at 563, 500 P.2d at 1018-19. The J & J Electric opinion stated:
 
 
 20
 A creditor, in dealing with the security held for the payment of a debt, is required to use ordinary business judgment and do what a prudent business man would do under the circumstances. And if he acts in good faith and without negligence, he is not responsible for a mere error of judgment on his part.
 
 
 21
 J & J Electric, 9 Wash.App. at 963, 516 P.2d at 224 (quoting First Nat'l Bank of Irwin v. Foster, 291 Pa. 72, 139 A. 609 (1927)). Here, since the district court specifically found that the City Engineer acted negligently in certifying project progress, the good faith defense simply does not apply. The City Engineer's negligence excuses the surety to the extent of the overpayments negligently made. See Black Masonry, 61 Wash. at 476, 112 P. at 519.
 
 IV. CONCLUSION
 
 22
 We find the district court correctly applied Washington law to the two payments in issue here. The judgment is accordingly AFFIRMED.
 
 
 
 [1]
 The judgment reflects $42,135 for the Pipe Payment, less the City's $12,500 recovery on its counterclaim